IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MOVSOVITZ & SONS of FLORIDA, Inc., et al.

    Plaintiffs

              v.

DORAL BANK, et al.

    Defendants

**Civil No. 08-1898 (SEC)**

**OPINION & ORDER**

Pending before this Court is Plaintiffs, Movsovitz & Sons of Florida, Inc. ("Movsovitz"), Puerto Nuevo Cold Storage, Inc. ("Puerto Nuevo"), Frank Garguilo & Son, Inc. ("Garguilo"), F.C. Bloxom Company ("Bloxom"), and New York Export Company, Inc.'s ("NY Export")(collectively "Plaintiffs") Motion for Summary Judgment (Docket # 48). Defendant, Doral Bank ("Doral" or "Defendant") has filed an opposition thereto (Docket # 53) to which Plaintiffs have replied (Docket # 53). Upon reviewing the filings, and the applicable law, Plaintiffs' motion is **GRANTED in part and DENIED in part.**

**Undisputed Facts**

This case involves the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499t, which creates a trust over assets connected to receivables and proceeds of certain agricultural commodities products until suppliers, sellers, and agents have been fully repaid.

Dee Produce Corporation ("Dee") was a Puerto Rico corporation engaged in the business of buying and selling wholesale quantities of produce in interstate commerce. The company was also a dealer subject to and licensed under the provisions of PACA.[1] Plaintiffs' Statement of

---

[1] Dee was licensed under PACA in 1991 (License No. 19911097).

**CIVIL NO. 08-1898(SEC)**                                                                                                         **Page 2**

Undisputed Facts (S.U.F.) # 6, Docket # 48-2. Dee funded its operations and business from the proceeds of the purchase and sale of fresh fruits and vegetables.[2]

Plaintiffs are all engaged in the business of buying and selling wholesale quantities of produce in interstate commerce. S.U.F. ## 1-5. During the period relevant to this suit, they have all been dealers or producers subject and licensed under PACA, § 499e(c).[3] Id. Between March and August 2004, Plaintiffs collectively sold and delivered to Dee, wholesale quantities of produce worth $539,574.60, of which $360,082.81 remains unpaid.[4] Id. at # 11-14. Plaintiffs delivered the produce to Dee, which Dee accepted. Id. Plaintiffs did not notify the Secretary of Agriculture of the United States of Dee Produce's default in payment. However, the invoices sent by Plaintiffs to Dee also contained the contracted terms that Dee was required to pay Plaintiffs interest on all outstanding invoices and all collection costs, including reasonable attorneys' fees, incurred by Plaintiffs in collecting any debt owed to them by Dee.[5] Id. at # 15.

Doral, was, and is, a secured creditor of Dee's. Id. at # 7. On March 24, 2003, Doral granted commercial loan number 3002001103 to Dee in the principal amount of $55,000. This loan is secured by personal guarantees. Id. at # 19. On October 11, 2003, Doral also granted a

---

[2] This is contested in as much as Doral asserts that Dee also obtained funding from capital loans originating from various local banks. Docket # 52-2 at 24.

[3] Movsovitz (License No. 2001153); Puerto Nuevo (License No. 20040327); Gargiulo (License No. 19762004); Bloxom (License No. 19207275); NY Export (License No. 19790637).

[4]
| | Dates of Sale | | Amount Due |
|---|---|---|---|
| Movsovitz & Sons of Florida, Inc. | 7/23/2004 | – 9/4/2004 | $ 113,068.07 |
| Puerto Nuevo Cold Storage, Inc. | 7/15/2004 | – 10/6/2004 | $ 69,705.80 |
| Frank Gargiulo & Sons, Inc. | 8/26/04 | – 10/4/2004 | $ 15,627.71 |
| F.C. Bloxom Company | 6/2/2004 | – 8/4/2004 | $ 120,206.24 |
| New York Export Co., Inc. | 3/9/2004 | – 3/26/2004 | $ 41,474.99 |

[5] This Court finds that Plaintiffs therefore complied with the language and requirements under PACA § 499e(c)(4). Accordingly, they preserved the benefits of the trust under PACA § 499e. Doral argues that notice of to the Secretary of Agriculture was necessary, under PACA § 499e(c)(4), but this argument is spurious given the statute's clear language. See, e.g., In re Bartlett, 367 B.R. 21, 32 (Bkrtcy. D. Mass. 2007).

**CIVIL NO. 08-1898(SEC)**                                                                                          **Page 3**

commercial line of credit number, 3002001286 to Dee in the principal amount of $100,000.[6] Id. at # 20. Said loan was secured by mortgage note for the principal amount of $110,000 over the property identified as "la Nave 14,"[7] locale number 14 in the "Centro de Acopio y Carnicerías de Caguas" in Caguas, Puerto Rico (hereafter "Nave 14"). A final relevant credit relationship existed with Doral's loan number 7580008062, granted on November 26, 2003, to Dee in the principal amount of $103,337.00, secured by a pledge of Doral Bank certificate of deposit number 657109, account number 0860024231 ( the "CD").[8] The CD on deposit with Doral originated from Dee.[9] Id. at ## 21-23. As of December 31, 2005, Doral was holding account number 840004410 in Dee's name with a balance of $78,025.44. These funds included the $60,000 transferred to the account as mentioned above, and deposits made by Dee Produce from October 1, 2004 to October 29, 2004.[10] Id. at # 29.

Before entering into the credit relationship, Doral requested and received from Dee accounts receivable reports, profit and loss statements, and audited financial statements from Dee before approving and executing the aforementioned transactions. Within this process,

---

[6] In 2004, Doral increased commercial line of credit number 3002001286 to the principal amount of $210,000.

[7] Dee acquired Nave 14 on September 18, 2001.

[8] The CD was liquidated on October 22, 2008 and applied to Dee's debt with Doral. At the time of liquidation, the CD had a balance of $124,793.98.

[9] Doral argues that these funds came from Arnaldo Detres, and not from Dee's PACA related activities. Docket # 52-2 at 4, # 5. However, this Court agrees with Plaintiffs that Doral has not proffered admissible evidence sufficiently controverting the PACA nature of the funds, or asserting their non-PACA trust origins. Doral's fact # 5 will therefore not be considered.

[10] In summary, Dee Produce owed Doral Bank:
(a) The $87,842.65 detailed in Paragraph 5, loan #3002001288;
(b) $86,387.29, loan #7580006802;
(c) $29,336.27, loan #3002001103.
Docket # 52-2.

**CIVIL NO. 08-1898(SEC)**                                                                                    **Page 4**

Doral requested and examined Dee's financial condition and conducted a due diligence investigation of Dee. This due diligence investigation included reviewing Dee's accounts payable reports, accounts receivable reports, profit and loss statements, and the financial condition of Dee's shareholders. Id. at # 23. Therefore, Doral knew that Dee was in the business of buying and selling fresh fruits and vegetables. Id. at # 24.

At some point Dee appears to have entered into financial difficulties, because on October 4, 2004, Plaintiffs Bloxom, NY Export, and other creditors filed an action in U.S. District Court for the District of Puerto Rico against Dee and its principals under the trust provisions of the PACA, 7 U.S.C. § 499e(c), in the aggregate amount of $290,152.56. F.C. Bloxom Company, et al. v. Dee Produce Corporation, et al., Civ. No. 04-02043 (D. P. R. filed October 4, 2004). A Temporary Restraining Order enjoining the transfer and dissipation of Dee's assets, including real property, was entered on October 5, 2004. Id. at # 8. Additionally, on October 8, 2004, Movsovitz filed an action in U.S. District Court for the District of Puerto Rico against Dee and its principals under the trust provisions of PACA, 7 U.S.C. § 499e(c), in the amount of $169,359.65. Movsovitz & Sons of Florida, Inc. v. Dee Produce Corp., Civ No. 04-02079 (D.P.R. filed October 8, 2004). However, these efforts to recover the amounts owed were interrupted when Dee Produce Corporation filed for relief under Chapter 11 of the United States Bankruptcy Code on October 12, 2004. In re Dee Produce Corp., Case No. 04-10488 (Br. P.R. 2004); Docket # 53-2 at 3.  This stay was lifted in 2006 with respect to assets in which Doral asserts a security interest, subject to the claims of Dee's PACA trust creditors.

In Dee's bankruptcy action, Plaintiffs, along with other sellers of produce, and Dee, filed a Stipulation and Agreed Order for PACA Claims Procedure ("PACA Claims Procedure"). S.U.F. # 16. The purpose of the PACA Claims Procedure was to facilitate collection and

distribution of PACA trust assets to qualified beneficiaries of the PACA trust by establishing which entities had properly preserved their status as PACA trust beneficiaries and, thus, held valid PACA trust claims, and also to establish the principal amount of such PACA claims. Id. The Order approving the PACA Claims Procedure was entered on March 17, 2005. Id. at # 17.

Plaintiffs in the abovementioned action timely filed their PACA declarations and were found to be qualified PACA beneficiaries in the aggregate amount of $539,574.60. Id.; see Notice of Filing of Amended PACA Trust Chart (Br. Doc. # 177). The Order approving the Amended PACA Trust Chart and the related distribution motion (Br. Doc. # 182) was entered at BK Doc. 221. As qualified PACA beneficiaries, Plaintiffs received $179,491.79 through the distributions of PACA assets leaving a total principal amount due to Plaintiffs of $360,082.81, as discussed above. Additionally, Plaintiffs NY Export and Bloxom obtained a judgment against Dee's principals under PACA, and Banco Popular de Puerto Rico and BBVA Puerto Rico have also filed claims in Dee's bankruptcy claims for various lines of credit issued to the company. Id. at # 18.

**Standard of Review**

*FED. R. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines

**Civil No. 08-1898(SEC)** 6

the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

**Applicable Law & Analysis**

The purpose of PACA is to aid agricultural traders recover payment for goods delivered to produce dealers and retailers. The statute recognizes that because farmers and agricultural distributors must quickly move their perishable inventory, they often have to sell their products to companies whose creditworthiness is unverifiable in such a short time-frame. Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2nd Cir. 1995). PACA was first passed in 1930, but expanded in 1984 to give greater priority vis a vis secured creditors. The amendment sought to protect PACA sellers, who ". . . as unsecured creditors, the sellers recover[ed], if at all, only after banks and other lenders who have obtained security interests in the defaulting purchaser's inventories, proceeds, and receivables."Id.; see also H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406-407. Accordingly, Congress created Section 499e(c) creating a trust in favor of the sellers of agricultural products.

**Civil No. 08-1898(SEC)**                                                                 **7**

The PACA trust ". . . applies to all of the buyer's produce in inventory and all proceeds from the sale of produce until full payment is made." Movosovitz & Sons of Florida, Inc. v. Axel Gonzalez, Inc., 367 F. Supp. 2d 207, 212 (D.P.R. 2005)("Movosovitz I"). Here, this Court must decide if the assets in question are part of the PACA trust.

Essentially, the trust comprises: "(1) produce purchased from suppliers, (2) all inventories of foods or other products derived from the produce, and (3) receivables or proceeds from the sale of said produce." Movosovitz & Sons of Florida, Inc. v. Scotiabank, 447 F.Supp.3d 156, 163 (D.P.R. 2006)("Movosovitz II"). Furthermore, "[t]he law is clear that a 'PACA beneficiary has priority over any secured creditor on the purchaser's commodity-related assets to the extent of the amount of his claim.'" Id. (citing Hiller Cranberry Prods. v. Koplovsky, 165 F.3d 1, 8-9 (1st Cir. 1999)); see also In re Kornblum & Co., Inc., 81 F.3d 280, 284 (2d. Cir.1996).

As already stated, the case in hand turns on the existence of a PACA trust covering the particular funds in controversy, or if, on the contrary, Doral can prove that the monies are exempt from PACA, or co-mingled with PACA funds. To do this, Doral has the burden of establishing:

> (1) no PACA trust existed when the property was transferred;
> (2) even though a PACA trust existed at that time, the transfer of property did not include trust assets; or
> (3) although a PACA trust existed when the property was transferred and the property included trust assets, all unpaid sellers were paid in full prior to the transaction.

Movsovitz II, 447 F.Supp.2d at 163-164 (summarizing the Kornblum exclusion factors). However, this Court must be able to determine that the funds in questions were trust monies in order to be able to enter summary judgment in favor of Plaintiffs. Id. at 166. The existence of a PACA trust, ". . . does not necessarily mean that the funds used to purchase those properties

**Civil No. 08-1898(SEC)** 8

were proceeds from [Dee's dealings in perishable agricultural goods]." Id.

In Kornblum, which has been cited and endorsed by the First Circuit, the Second Circuit concluded, when analyzing the statutory intent of the trust provision in 7 U.S.C. Sec. 499e(c)(2), that "all of the emphasized language [in PACA] points to a single, undifferentiated trust for the benefit of all sellers or suppliers of Produce except the phrase 'involved in the transaction,' which we do not read as countermanding the clear import of the balance of the statutory language." Id. at 286. This Court will follow said ruling, that there is ". . . a single, undifferentiated trust for the benefit of all sellers and suppliers." Id.

The acquisition of assets before a particular transaction or business relationship is started with a particular creditor does not preclude an action if a PACA trust was already in existence, because it must continue "until all of the outstanding beneficiaries have been paid in full." Kornblum, 81 F.3d at 286. Accordingly, Defendants are wrong on the main points of law they argue. These are, the existence and date of creation of the PACA trust, and whether the acquisition of an asset prior to a transaction with a creditor impedes a PACA claim. Furthermore, the burden of establishing the non-existence of the PACA trust falls on the non-beneficiary, in this case Doral. Id. at 287. Given the aforementioned framework, this Court will rule on the motion for summary judgment as to the following assets.

*Nave 14*

As to Nave 14 particularly, the undisputed facts of this case establish that Dee acquired Nave 14 in 2001, and that a PACA trust existed at said moment. Doral alleges that all three (3) Kornblum exclusion exceptions apply to this property. However, the first (1st) and third (3rd) are obviously not applicable. As stated above, a PACA trust does not apply only to an individual supplier, rather it constitutes a "'non-segregated floating trust' that applies to all of the buyer's

**Civil No. 08-1898(SEC)** 9

produce in inventory and all proceeds from the sale of produce until full payment is made." Movosovitz II, 447 F.Supp. 2d at 162. Therefore, given that Dee engaged in PACA related activities between 1991 and 2004, its assets were presumably subject to PACA in 2001 when it acquired Nave 14. Doral has done nothing to controvert this contention, and thus fails to assert Kornblum assertion number one (1), nor has it proffered any evidence that all unpaid sellers of produce were paid either when Nave 14 was acquired, or in 2004 when Plaintiffs engaged in business with Dee, so it fails to argue exclusion number three (3) as well. As to Kornblum exclusion number two (2), Doral has not proffered admissible evidence that Nave 14 was acquired with Dominic D'Abate's ("D'abate"), a Dee shareholder, non-trust personal assets. All that has been submitted is a pleading to the Bankruptcy Court, which is clearly insufficient to controvert the presumption that a PACA trust existed over the funds.

On the other hand, Plaintiffs have submitted evidence, in the form of a title search (Docket # 48-17, Exh. 13), that Dee acquired the property on September 18, 2001. At said time, a PACA trust existed, and given that Dee funded its operations with proceeds from the purchase and sale of fresh fruits and vegetables, and Doral has not proffered any admissible evidence that a Kornblum exclusion factor should apply, this Court must conclude that Nave 14 is part of the PACA trust.  Accordingly, summary judgment as to Nave 14 shall be **GRANTED**. Doral shall account for and disgorge any funds received from the sale of Nave 14, or return said property to Plaintiffs.

*The CD*

A similar analysis applies to the CD. Clearly, a PACA trust existed in 2003, and no evidence has been given to suggest that all unpaid sellers were paid in full prior to the transaction. Accordingly, Doral would have to prove that the CD was not connected to trust

**Civil No. 08-1898(SEC)** 10

assets, which it has not done. The Bankruptcy pleading alleges that the CD was acquired with funds from Arnaldo Detres ("Detres"), who was a Dee principal, but is insufficient to controvert Plaintiffs' well pled facts, as a pleading does not constitute testimonial evidence of a particular fact. Nevertheless, as in <u>Movsovitz II</u>, Plaintiffs have not provided sufficient evidence as to the origin of the CD to, ". . . put the Court in a position to evaluate the evidence and be able to draw reasonable conclusions therefrom." <u>Movosovitz II</u>, 447 F.Supp. 2d at 166. In fact, the very admissions Plaintiffs refer to (S.U.F. # 26) to substantiate that the CD came from trust funds, also allude to, ". . . personal funds transferred from Detres' personal accounts." Docket # 48 at 15. Accordingly, summary judgment as to the CD must be **DENIED**.

*Doral Bank Account # 840004410*

These funds were loaned to Dee by Doral on October 11, 2004. This fact is uncontroverted, and therefore shows that these monies originated from a bank loan, and not from PACA trust assets. Accordingly, this Court is satisfied that Doral has met <u>Kornblum</u> exception two (2) could apply to these monies. Therefore, as to Doral Account # 840004410, summary judgment must be **DENIED**.

**Conclusion**

In light of the above, Plaintiffs' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Furthermore, pursuant to Local Rule 83.10(b)(1), the Court refers this case to mediation. Under Local Rule 83.10(c)(4)(A), the parties are hereby granted **10 days**, until **May 31, 2010**, to notify the name of the person selected as mediator from the approved list maintained by the Court, and file a written agreement with the selected mediator. If the parties cannot agree to a mediator within the 10-day period, they may submit up to two names each for the Court to take into account when selecting the mediator. Local Rule 83.10(c)(4)(B). If the

**Civil No. 08-1898(SEC)**                                  **11**

parties fail to notify the Court about their selection within the 10-day period, the Court will select a mediator from the approved list maintained by the Court. Id.

On a final note, this Court finds that Plaintiffs do have a right to collect costs and attorney's fees. Nevertheless, these are limited to the assets of the PACA trust, and cannot be levied against Doral's other assets.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 17th day of May, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge